**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TRIUMPH HOSPITALITY, LLC,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 3:19-cv-00353** |
| **CONSTRUCTION MANAGEMENT,** | ) | **Judge Aleta A. Trauger** |
| **INC., WILLIAM COULSON,** | ) | |
| **Individually, and DUSTIN GEDITZ,** | ) | |
| **Individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court is the defendants' Motion to Dismiss (Doc. No. 7), which seeks the dismissal of several of the claims asserted in plaintiff Triumph Hospitality, Inc.'s Corrected First Amended Complaint (Doc. No. 6) against defendant Construction Management, Inc. ("CMI") and dismissal of all claims asserted against defendants William Coulson and Dustin Geditz in their individual capacities. In its Response (Doc. No. 17), the plaintiff voluntarily dismisses (without prejudice) its claims for breach of contract and breach of the covenant of good faith and fair dealing against defendants Coulson and Dustin. Despite some ambiguity, addressed herein, it also appears to voluntarily dismiss its claim for procurement of breach of contract. Otherwise, it opposes the motion and posits, in the alternative, that it should be permitted to again amend its Complaint under Rule 15 of the Federal Rules of Civil Procedure.

For the reasons set forth herein, the plaintiff's motion to amend its pleading will be granted, and the defendant's motion will be granted in part and denied in part as moot.

# I. Procedural Background

Triumph initiated this action on April 9, 2019 by filing a Verified Complaint in the Chancery Court for Montgomery County, Tennessee, naming CMI and Coulson as defendants. The defendants removed the case to this court on April 30, 2019, on the basis of diversity jurisdiction. (Doc. No. 1). Triumph promptly filed a First Amended Complaint, and then a Corrected First Amended Complaint (hereafter "Complaint"), adding defendant Dustin Geditz and lengthening the already lengthy pleading by an additional nine pages.

Triumph brings numerous claims for relief,[1] largely without distinguishing which defendants are the target of which claims. The plaintiff seeks declaratory relief, damages, costs, attorney's fees, and pre- and post-judgment interest. In lieu of answering, the defendants filed their Motion to Dismiss under Rule 12(b)(6), seeking dismissal of the claims for: (1) intentional misrepresentation/fraud and civil conspiracy (Count III); (2) fraud in the inducement (Count IV); (3) negligent misrepresentation (Count V); (4) breach of fiduciary duty (Count VI); (5) procurement of breach of contract (Count VII); (6) violation of Tenn. Code Ann. § 62-6-103 (Count XI); (7) violation of the Tennessee Consumer Protection Act (Count XII); (8) piercing the corporate veil (Count XIII); (9) "misrepresentation by concealment" (Count XIV); and (10) rescission (Count XV). In addition, they seek the dismissal of the claims for breach of contract (Count VIII) and breach of the covenant of good faith and fair dealing (Count IX), to the extent these claims are asserted against defendants Coulson and Geditz.

In its Response in Opposition to Defendants' Motion to Dismiss (Doc. No. 17), the plaintiff agrees to voluntarily dismiss without prejudice, pursuant to Rule 41(a)(1), its claims

---

[1] Several of the items Triumph characterizes as distinct causes of action appear merely to be types of damages or remedies.

for breach of contract and breach of the covenant of good faith and fair dealing against Coulson and Geditz and the claim for procurement of breach of contract against all defendants. Otherwise, the plaintiff insists that its claims are adequately pleaded and, in the alternative, moves for leave to amend the Complaint to plead with more particularity any claims the court finds are inadequately supported. The defendants have filed a Reply (Doc. No. 18), arguing that the plaintiff's Response simply ignores the governing legal standards pertaining to pleading.

## II.    Factual Allegations

Triumph alleges that it is a Tennessee limited liability company in the business of hotel development and that it owns and operates the Sleep Inn (the "Hotel") located at 230 Cracker Barrel Drive, Clarksville, Montgomery County, Tennessee. CMI is a South Dakota corporation with its principal place of business in South Dakota. Coulson and Geditz are residents of South Dakota and CMI's incorporators.

Triumph entered into a contract ("Contract") with CMI in September 2016, pursuant to which CMI was to construct the Hotel in Clarksville for approximately $5.8 million. (*See* Contract, Doc. No. 1-2, at 70.)[2] Triumph states, without explanation, that "[d]efendants did not allow Triumph to negotiate the terms of the Contract." (Compl. ¶ 63.) The Contract was a "cost-plus" agreement, meaning that Triumph would reimburse CMI for all actual costs of construction and pay a contractor's fee of 9% above that total for "overhead and profit and an additional supervision fee." (Compl. ¶ 59.) Triumph generally alleges that CMI was not licensed to engage in the construction of multi-million-dollar projects in the state of Tennessee; that the defendants, acting collectively, fraudulently represented that it was so

_____

[2] The Contract contains an arbitration provision, which CMI has apparently elected not to enforce.

licensed; and that the defendants fraudulently induced the plaintiff to contract with CMI to build the Hotel and then failed to fulfill their obligations under the Contract.

More specifically, Triumph alleges that CMI was incorporated in the state of South Dakota in March 2015. (Compl. ¶¶ 19, 22; Certificate of Incorporation, Doc. No. 1-2, at 40, 41.) The Articles of Incorporation identify both Coulson and Geditz as Incorporators of CMI. (Compl. ¶¶ 20, 21; Doc. No. 1-2, at 42.) Coulson is also identified in various corporate filings as the registered agent, president, director, and sole shareholder. (Compl. ¶¶ 20, 21; Doc. No. 1-2, at 41, 42, 44.)

On April 20, 2015, the defendants made an initial filing with the Tennessee Secretary of State to register CMI to do business in Tennessee and, on the same date, applied for a general contractor's license with the Tennessee Board for Licensing Contractors (the "Board"). (Compl. ¶¶ 31 and 32; Doc. No. 1-2, at 50–54 (Contractor's License Application).) In the space on the Application for identifying the "Monetary Limit Requested (size of contracts)," someone initially wrote "unlimited," marked that out and wrote "$500,000.00" just above it, and then marked out that figure and wrote $284,000.00, with illegible initials scribbled next to the last change. (Doc. No. 1-2, at 51.)

Although the Complaint broadly refers to the "defendants," the Contractor's License Application identifies CMI as the applicant whose name should appear on the license; William Coulson is identified as the "Qualifying Agent," 100% owner, and president of CMI; and Dustin Geditz is identified as a qualifying agent or employee, and his name is designated to be on the license based on his contracting experience. (Doc. No. 1-2, at 50–53.) Both Dustin Geditz and William Coulson executed the Tennessee Contractor's License Affidavit that is incorporated into the Contractor's License Application, and the packet of

documents submitted with the Application also includes a Power of Attorney executed by Coulson and appointing Geditz as Project Manager and Power of Attorney. (Doc. No. 1-2, at 56.)

In the Affidavit, both Coulson and Geditz attest, among other things, that CMI had "**NOT** bid, offered to engage or performed any construction in the State of Tennessee, where the amount of the contract was $25,000 or more, or in the case of those domiciled in non-reciprocal states, $2,500, as would require a contractor's license to engage in contracting." (Doc. No. 1-2, at 55; Compl. ¶ 33.) Triumph contends that this statement was false, because the defendants had already entered into a contract and "pulled a permit" to build a four-story hotel in Nashville, Tennessee in December 2014 (Compl. ¶ 29; Doc. No. 1-2, at 46), even before CMI was incorporated in South Dakota.

On May 20, 2015, Coulson, on behalf of CMI, filed a Hardship License Request ("hardship request"), representing that it would pose a hardship on the owner of a project CMI wanted to bid for to wait until the next scheduled Board meeting for approval of CMI's license application. (Doc. No. 1-2, at 58.) The originally requested monetary limit on the hardship request was "unlimited," and Colson represented that CMI had not actually bid on or performed work without the appropriate license. (Doc. No. 1-2, at 58.) Coulson, on behalf of CMI, submitted a revised hardship request, pertaining to the same project, on June 29, 2015. The monetary limit requested on the revised application was $284,000. (Doc. No. 1-2, at 60; Compl. ¶ 36.)

By letter dated June 30, 2015 ("hardship license letter"), the Board granted the hardship request and authorized CMI to bid and perform work on construction projects in Tennessee on contracts valued at $284,200 or less. The qualifying agent identified on the

license was Dustin Geditz; the expiration date was July 31, 2017. (Doc. No. 1-2, at 62; Compl. ¶ 39.)

The plaintiff alleges that, upon discovering that "they" were going to receive a license with a $284,200 monetary limit, Coulson and Geditz conspired together to defraud the local permitting offices in Tennessee "and all potential owner/developers" by agreeing to alter, and actually altering, "their" hardship license letter to reflect an "unlimited" budget amount and using that document to induce builders to contract with them on projects well over the limitation established by CMI's license. They acted on that conspiracy by altering the license letter accordingly. (Compl. ¶¶ 41–44; Doc. No. 1-2, at 67, 96–99; *see also* Doc. No. 1-2, at 100–30 (Board Request for Summary Suspension of CMI's license, with attached supporting exhibits).) In further perpetration of the conspiracy, the "defendants" falsely advertised on CMI's website that "We are either licensed or capable of licensing in all lower 48 states." (Compl. ¶ 48; Doc. No. 1-2, at 69.)

The Complaint alleges that Coulson fraudulently represented to Triumph that CMI was a board qualified contractor, licensed to build hotels in Tennessee with an unlimited budget. (Compl. ¶ 45.) The Complaint does not allege when this representation took place or in what context. The Complaint states very generally that the "defendants" used the same falsified license to induce Triumph to enter into a contract with "it," presumably meaning CMI (Compl. ¶ 46), and that the "defendants" collectively made fraudulent representations and held "itself" out to Triumph to be a licensed general contractor qualified to construct a multi-million-dollar hotel (Compl. ¶ 49). The "defendants" bid on Triumph's project, and Triumph, in reliance upon representations by the "defendants," ultimately awarded the project to "the defendants" and entered into the Contract for the construction of the Hotel.

(Compl. ¶¶ 50, 51.) The parties executed the Contract on September 1, 2016 for the construction of a $5.8 million hotel in Tennessee. (Compl. ¶ 69; Doc. No. 1-2, at 70–95.) The Contract itself does not incorporate any representations regarding CMI's licensure status.

Although Triumph alleges numerous problems with the Contract, the construction, and the end product, it received a certificate of occupancy for the Hotel sometime in September 2018.

In October 2018, after Triumph's relationship with CMI had largely concluded, a complaint against CMI was filed with the Board, alleging that CMI was building in Tennessee without the required license. (Compl. ¶¶ 110–11; Doc. No. 1-2, at 96–99.) As a result, the Board discovered that CMI had altered its hardship license letter in order to pull permits and engage in construction projects in excess of the monetary limit imposed by its license. (Compl. ¶ 112; Doc. No. 1-2, at 100–30.) CMI's license was suspended. (Compl. ¶ 114.)

CMI voluntarily entered into a Consent Order before the Board, dated January 30, 2019, which adopted findings of fact, including that: (1) CMI had entered into several contracts to build hotels over the course of the two years preceding November 27, 2018; it had acquired its contractor's license with a monetary limit of $284,200 on July 29, 2015; CMI altered its hardship license letter to show the monetary limit as "unlimited"; CMI had used the fraudulent letter to mislead codes departments into issuing permits that exceeded CMI's actual monetary limit; CMI's contractor's license was renewed on July 19, 2017 with the same $284,200 monetary limit; based on CMI's financial statements, the company lacked the financial solvency to contract projects over $284,200. (Doc. No. 1-2, at 136–37.) Based on CMI's violation of Tenn. Code Ann. § 62-6-103(a)(1) and the Board's finding that it

posed an immediate danger to the health, safety and welfare of the citizens of the State of Tennessee, CMI's contractor's license was immediately and summarily suspended for a period of six months, effective November 27, 2018. (Doc. No. 1-2, at 138–39.) The Consent Order imposed a civil penalty and other restrictions. Triumph alleges that the "defendants" kept illegally operating in Tennessee, even following the suspension of CMI's license. (Compl. ¶ 119.)

## III.    Legal Standards

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff" and "accept its allegations as true." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Unless additional pleading requirements specific to the plaintiff's claims say otherwise, the Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

Rule 9(b) of the Federal Rules of Civil Procedure states that, when pleading fraud, "a party must state with particularity the circumstances constituting fraud." The Sixth Circuit has explained that, while Rule 9(b) imposes a heightened standard, the underlying purpose of the rule is to serve the same ends as the general pleading requirements of Rule 8:

> [Rule 9(b)] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. Rule 9(b), however, also reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading.

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (citations and quotation marks omitted). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* "Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide examples of specific' fraudulent conduct that are 'representative samples' of the scheme." *United States ex rel. Marlar v. BWXT Y–12, LLC*, 525 F.3d 439, 444–45 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)). "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put [the opposing party] on notice as to the nature of the claim." *Williams v. Duke Energy*

*Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).

## IV.    Discussion

### A.    Failure to Plead Fraud with Particularity

The defendants argue that the plaintiff's fraud claims, including Count III (intentional misrepresentation[3]), Count IV (fraud in the inducement), and Count XIV (misrepresentation by concealment) are inadequately pleaded because the Complaint fails to specify which of the three separate defendants is responsible for the intentional misrepresentations or fraudulent omissions at issue. Instead, the defendants argue, the Complaint treats the defendants monolithically as a single entity. They assert that this type of "group pleading" does not satisfy the requirements for pleading fraud under Rule 9 of the Federal Rules of Civil Procedure. In response, Triumph argues that it has pleaded these claims with sufficient specificity to put the defendants on notice of what the claims are and that the defendants, at this juncture, are in sole possession of "the intimate knowledge of how the licensing paperwork was filled out and by whom and which of them altered the documents." (Doc. No. 17, at 6.) In the alternative, Triumph maintains that it should be permitted to amend or supplement its pleading.

Generally speaking, a plaintiff seeking to comply with Rule 9(b) must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the

---

[3] Insofar as the plaintiff intended to distinguish among claims for intentional misrepresentation, fraudulent misrepresentation, and fraud, under Tennessee law, these terms are simply different names for the same cause of action. *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012); *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn. 1999). Because the Tennessee Supreme Court has suggested that the term "intentional misrepresentation" be used exclusively, in order to avoid confusion, *see Hodge*, 382 S.W.3d at 342, the court refers to this claim as intentional misrepresentation.

fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bledsoe*, 501 F.3d at 504 (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)). Courts, however, have recognized that fraud often involves subterfuge and misdirection that may leave a victim in the dark about many of the details of a scheme, even after he realizes he has been defrauded. Accordingly, "Rule 9(b)'s particularity requirement may be relaxed when certain information is solely within the defendant's knowledge." *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 630 (N.D. Ohio 2016) (quoting *SEC v. Blackwell*, 291 F. Supp. 2d 673, 691 (S.D. Ohio 2003)). In that light, Rule 9(b) does not require Triumph to know, for example, who originally altered the hardship license letter.

Rule 9(b)'s flexibility with regard to information outside the reach of a plaintiff, however, cannot excuse all of Triumph's omissions. A plaintiff asserting a cause of action for intentional misrepresentation must establish six elements:

> (1) that [the defendant] made a representation of an existing or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that [the defendant] made the representation recklessly, with knowledge that it was false, or without belief that the representation was true; (5) that the [plaintiff] reasonably relied on the representation; and (6) that [the plaintiff was] damaged by relying on the representation.

*Davis v. McGuigan*, 325 S.W.3d 149, 154 (Tenn. 2010) (citing *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)). In order to effectively plead these elements, a plaintiff must identify, at least generally, "who [is alleged to have] made particular misrepresentations and when they were made." *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 745 (6th Cir. 1992). Without a clear identification of the allegedly false statements and their speakers, one cannot effectively assert the elements of falsity,

materiality, knowledge, or reasonableness of reliance. Without at least some sense of the timing of the statements—and, therefore, their context within the parties' course of business—one cannot effectively assert materiality, reliance, or damages. Triumph, however, describes CMI's scheme only generally, with very little detail regarding specific misrepresentations made to CMI itself, as opposed to, for example, false statements made to permitting authorities. While Triumph does allege that Coulson fraudulently represented to Triumph that CMI was a board-qualified contractor licensed to build hotels in Tennessee with an unlimited budget, it does not indicate when this statement was made, in what context, or how Triumph relied on the statement. While it points to the altered hardship license letter, Triumph does not allege that it actually saw that document prior to contracting with CMI. Moreover, the purpose of the alteration appears to have been to deceive permitting offices, not Triumph. To proceed with its fraud claims, Triumph is required to describe, with particularity, how *it* was defrauded—for example, by describing specific misrepresentations, by and to identifiable people, about the scope of CMI's licensure.

Moreover, CMI, Coulson, and Geditz are correct that, when a plaintiff pursues fraud claims against multiple defendants, it must make "specific allegations as to each defendant's alleged involvement." *N. Port Firefighters' Pension–Local Option Plan v. Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740, 773 (M.D. Tenn. 2013) (Haynes, C.J.). Mere "'group pleading' . . . fails to meet . . . [Rule] 9(b)'s specificity requirements . . . ." *D.E.&J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 730 (E.D. Mich. 2003), *aff'd*, 133 F. App'x 994 (6th Cir. 2005). While Triumph cannot be expected to know, particularly at this stage of litigation, what went on between Coulson and Geditz behind closed doors, it should at least be able to assert clearly what each man did or did not say to particular Triumph personnel. If

there is information Triumph lacks—for example, the precise date or wording of a communication—it can simply say so in its statement of its claims. Rule 9(b) does not require perfect recollection or knowledge—it merely requires enough particularity for each defendant to know what the claims against him or it are about. The Complaint's repeated reference to "defendants" is unacceptably vague.

Because Triumph has failed to tie each defendant to a specific, identifiable false statement at a specific time (or at least a reasonably described range of possible dates), it has not met the requirements of Rule 9(b). Nevertheless, the court finds good reason to allow Triumph to amend its statement of its claims. This case is early in the proceedings, and the issues underlying Triumph's fraud allegations are central to the case. The court, therefore, will allow Triumph to file a Second Amended Complaint. *See* Fed. R. Civ. P. 15(a)(2) (providing that leave to amend should be "freely" granted "when justice so requires").

The fact that Triumph will be given the opportunity to provide more detailed support for its intentional misrepresentation claim obviates any need by the court to consider several of the defendants' other arguments. In particular, the defendants argue that Triumph has failed to plead fraudulent concealment, negligent misrepresentation, and violation of the Tennessee Consumer Protection Act with the particularity required by Rule 9. They also argue that the allegations are "especially threadbare" (Doc. No. 7-1, at 11) as they pertain to defendant Geditz and that the conspiracy claim must be dismissed because it lacks an underlying tort (since the fraud claims are defective) and is not pleaded with the requisite particularity. These are all issues that the court can—if the defendants so move—revisit once the fraud is more clearly explained.

In sum, the court will grant the plaintiff's motion to amend the complaint to plead

with greater specificity all of these claims—intentional misrepresentation (Count III), fraud in the inducement (Count IV), misrepresentation by concealment (Count XIV), negligent misrepresentation (Count V), violation of the Tennessee Consumer Protection Act (Count XII), and civil conspiracy (Count III)—and will deny as moot the motion to dismiss these claims.

### B. Procurement of Breach of Contract

Triumph's Count VII, for procurement of breach of contract, is premised upon a theory that the "Defendants intended to breach the Contract when it [sic] knowingly entered into the Contract under the false and altered license." (Compl. ¶ 234.) The defendants argue that this claim should be dismissed because CMI, as a party to the contract, cannot be liable for procuring the breach of that contract and, similarly, that Coulson and Geditz, as agents and employees of CMI, were not third parties to the contract and therefore cannot be liable for procuring its breach.

The plaintiff's Response contains a subsection titled "Triumph Voluntarily Dismisses Without Prejudice It's [sic] Claim for Procurement of the Breach." (Doc. No. 17, at 16.) Under this heading, Triumph copied and pasted the text from the section titled "Triumph Voluntarily Dismisses Without Prejudice It's [sic] Claim for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing Against Individual Defendants, William Coulson and Dustin Geditz Only." (Doc. No. 17, at 16.) That is, the text in both sections states only:

> Pursuant to Fed. R. Civ. P. 41 Triumph voluntarily dismisses without prejudice its claim against the individual Defendants for William Colson and Dustin Geditz for breach of covenant of good faith and fair dealing against individual William Coulson and Dustin Geditz.

(Doc. No. 17, at 16.)

Based on the heading, the court understands that Triumph intends to dismiss the breach of procurement claim and that it likely intended to dismiss the claim as to all defendants and not only Coulson and Geditz. It did not spell out that intention, however. Moreover, a "basic principle under Tennessee law [is] that a party to a contract cannot be liable for tortious interference with that contract." *Cambio Health Solutions, LLC v. Reardon*, 213 S.W.3d 785, 789 (Tenn. 2006); *see also Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758, 759 (Tenn. 1977) ("[A] party to a contract cannot be held liable for procuring its own breach or termination of that contract."). The court will therefore grant that portion of the defendants' motion seeking dismissal *with prejudice* of the claim for procurement of breach of contract against CMI. It will grant the plaintiff's motion to dismiss without prejudice this claim insofar as it is asserted against Coulson and Geditz.

### C.     Breach of Fiduciary Duty

In support of Count VI of the Complaint, for breach of fiduciary duty, Triumph asserts that it had a confidential relationship with the defendants, that the defendants "were the dominant personalities having control over Triumph with their alleged building expertise," and that Triumph, in reliance upon that expertise and confidential relationship, awarded "defendants" the contract and was damaged as a result. (Compl. ¶¶ 224, 225, 228.) The defendants seek dismissal of this claim on the grounds that the plaintiff fails to allege specific facts that would support a finding that a fiduciary relationship existed between the plaintiff and any of the defendants. Triumph, in response, insists that the question of whether a fiduciary relationship was created is question of fact to be resolved by the jury. It argues that it has adequately alleged that the defendants were in a position to influence or exercise control over the plaintiff by virtue of the terms of their contract and the fact that this was

Triumph's first hotel, while the defendants held themselves out to be experienced builders of commercial hotels. It alleges that Triumph did not have the opportunity to negotiate the terms of the contract and asserts that the defendants "exercised complete control over the Project." (Doc. No. 17, at 18.) It also argues that a cost-plus contract, such as the one at issue here, implies an understanding that the costs must be reasonable and gives rise to a "special duty" on the part of the contractor to the owner. (*Id.* (citing *Forrest Constr. Co. v. Laughlin*, 337 S.W.3d 211, 223 (Tenn. Ct. App. 2009)).)

"In order to recover for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." *Ann Taylor Realtors, Inc. v. Sporup*, No. W2010-00188-COA-R3-CV, 2010 WL 4939967, at *3 (Tenn. Ct. App. Dec. 3, 2010) (citing 37 C.J.S. Fraud § 15 (2008)). For purposes of the first element, Tennessee law recognizes two types of fiduciary relationships: (1) "relationships that are fiduciary per se (e.g., attorney/client, guardian/ward) and (2) relationships that are 'confidential' due to one party's ability to exercise 'dominion and control' over another party." *Innerimages, Inc. v. Newman*, No. E2018-00375-COA-R3-CV, 2019 WL 1380096, at *15 (Tenn. Ct. App. Mar. 26, 2019) (citations omitted). Triumph does not purport to claim a fiduciary per se relationship with the defendants.

Tennessee courts have recognized that "confidential relationships can assume a variety of forms," as a result of which "the courts have been hesitant to define precisely what a confidential relationship is and the court must look to the particular facts and circumstances of the case to determine whether one party exercised dominion and control over another, weaker party." *Foster Bus. Park, LLC v. Winfree*, No. M2006-02340-COA-R3-CV, 2009 WL

113242, at *12 (Tenn. Ct. App. Jan. 15, 2009)). "[F]iduciary relationships may arise whenever confidence is reposed by one party in another who exercises dominion and influence." *Id.* at *13. Notably, however, the mere fact that one of two contracting business entities professed to possess greater expertise in the pertinent business arena does not suffice to establish that the party with greater expertise dominates or controls the other. *See, e.g.*, *Faber v. Ciox Health, LLC*, 331 F. Supp. 3d 767, 781 (W.D. Tenn. 2018) ("[T]he general rule is that 'parties dealing at arm's length lack the sort of relationship of trust and confidence that gives rise to a fiduciary relationship.'" (quoting *Hall v. Liberty Ins. Corp.*, No. 3:13-CV-206-TAV-HBG, 2013 WL 6571928, at *6 (E.D. Tenn. Dec. 13, 2013))).

Triumph alleges few actual facts in support of the existence of a confidential relationship. Moreover, it appears that the only form the alleged breach of fiduciary duty took is the defendants' failure to disclose that CMI was not properly licensed. Insofar as the alleged breach of fiduciary duty consists of the failure to disclose CMI's true licensure status, the claim appears to overlap substantially with the plaintiff's claim for fraudulent concealment. A claim for fraudulent concealment exists when one party knows pertinent facts and fails to disclose them, despite a duty to do so. *See Shadrick v. Coker*, 963 S.W.2d 726, 736 (Tenn. 1998). Such a duty to disclose, in turn, "arises where a confidential relationship exists." *Id.* (quoting *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992)). As the Tennessee Supreme Court has explained:

> Fiduciary relationship, confidential relationship, constructive fraud and fraudulent concealment are all parts of the same concept. [T]he nature of the relationship which creates a duty to disclose . . . springs from the confidence and trust reposed by one in another, who by reason of a specific skill, knowledge, training, judgment or expertise, is in a superior position to advise or act on behalf of the party bestowing trust and confidence in him. Once the relationship exists there exists a duty to speak . . . [and] mere silence constitutes fraudulent concealment.

*Shadrick*, 963 S.W.2d at 736 (internal quotation marks and citation omitted), *quoted in PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 550 (Tenn. Ct. App. 2012). Tennessee courts also recognize, however, that concealment, in the context of a claim for fraudulent concealment, may "consist in withholding information asked for, or in making use of some device to mislead, thus involving act and intention. The term generally [implies] that the person is in some way called upon to make a disclosure." *PNC Multifamily Capital Inst. Fund*, 387 S.W.3d at 550.

At this juncture, the court finds that the Complaint fails to allege facts sufficient to establish the existence of a confidential relationship for purposes of a claim for breach of fiduciary duty. Triumph's allegations that the defendants "were the dominant personalities, having control over Triumph with their alleged build expertise" in conjunction with the existence of a cost-plus contract, standing alone, are overly conclusory. Regardless, because of the substantial overlap with the fraudulent concealment claim and the court's determination that the plaintiff should be permitted to amend the Complaint to allege fraud— including fraudulent concealment—with greater specificity, the plaintiff will, at the same time, have the opportunity to amend its pleading to allege additional facts in support of its claim for breach of fiduciary duty. The defendant's motion to dismiss the claim too will be denied, without prejudice.

**D.    Violation of Tenn. Code Ann. § 62-6-103**

Triumph's Count XI purports to plead a cause of action under Tenn. Code Ann. § 62-6-103. It asserts that this statute requires contractors to be duly licensed and makes it unlawful to engage in projects the value of which exceeds the contractor's license. It seeks damages based on the defendants' violation of § 62-6-103 in the form of "repayment of the

overhead/profit and supervision fees paid to CMI and other damages." (Compl. ¶ 275.) The defendants argue that the claim should be dismissed because the statute does not create a private cause of action and, instead, provides an affirmative defense to claims brought by contractors for recovery for breach of contract. (*See* Doc. No. 7-1, at 19–20.)

The defendants are correct. Tenn. Code Ann. § 62-6-103 provides generally that any person or entity engaged in contracting in the state of Tennessee "shall be required to submit evidence of qualification to engage in contracting, and shall be licensed" to engage in contracting. Tenn. Code Ann. § 62-6-103(a)(1). The same code provision makes it "unlawful for any person [or entity] to engage in or offer to engage in contracting for any project in this state, unless, at the time of such engagement or offer to engage, the person [or entity] has been duly licensed with a monetary limitation sufficient to allow the person [or entity] to engage in or offer to engage in such contracting project." *Id.* Any contractor who is in violation of the licensing requirements "shall not be permitted to recover any damages in any court other than actual documented expenses that can be shown by clear and convincing proof." *Id.* § 62-6-103(b).[4]

The statute nowhere provides a private cause of action for the recovery of damages by the party that contracted with an unlicensed contractor. It simply limits the unlicensed contractor's ability to recover in its own suit for damages for breach of contract. The Tennessee courts have interpreted it thus, holding that the statute cannot "be construed to

---

[4] Prior to 1980, unlicensed contractors could not maintain actions for breach of contract or quasi-contract against owners. *Farmer v. Farmer*, 528 S.W.2d 539, 542 (Tenn. 1975). The Tennessee Supreme Court found the rule to be harsh, *Santi v. Crabb*, 574 S.W.2d 732, 734 (Tenn. 1978), but continued to apply it with regard to claims against owners. *Gene Taylor & Sons Plumbing Co. v. Corondolet Realty Trust*, 611 S.W.2d 572, 575–76 (Tenn. 1981). In 1980, the General Assembly mitigated the harsh effect of the rule by enacting Tenn. Code Ann. § 62-6-103(c) (now codified at § 62-6-103(b)). *See Winter v. Smith*, 914 S.W.2d 527, 540–41 & n.26 (Tenn. Ct. App. 1995).

require an unlicensed contractor to account by clear and convincing evidence for all amounts previously, voluntarily paid by the owner." *Nguyen v. Hart*, No. 03A01-9302-CH-00058, 1993 WL 291411, at *3 (Tenn. Ct. App. July 29, 1993); *accord Constr. Mgmt., Inc. v. Expo Hosp., LLC*, No. 3:19-CV-00298, 2019 WL 2917991, at *7 (M.D. Tenn. July 8, 2019) (Trauger, J.) (rejecting an identical claim against CMI, recognizing that, under Tennessee law, "[i]n order for legislation enacted by the general assembly to create or confer a private right of action, the legislation must contain express language creating or conferring the right" (quoting Tenn. Code Ann. § 1-3-119(a))).

In its Response, Triumph argues that *Nguyen* is distinguishable because Triumph's payment was not truly voluntary, having been procured by fraud. As this court previously recognized, however, in an almost identical context, "[a] claim cognizable as fraud . . . is just a fraud claim or, in other words, a claim for intentional misrepresentation; there is no reason to rely on the statutory peg of § 62-6-103." *Constr. Mgmt., Inc.*, 2019 WL 2917991, at *7. Because § 62-6-103 does not create a private cause of action, this claim is subject to dismissal for failure to state a claim for which relief may be granted.

### E.      Piercing the Corporate Veil

For its thirteenth cause of action, the plaintiff asserts that Coulson should be individually liable for the actions of CMI, citing Tenn. Code Ann. § 62-6-136(c). The defendants argue that the plaintiff has failed to allege sufficient facts to show that the corporate veil should be pierced in this case. (Doc. No. 7-1, at 21–22 (citing *Fed. Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984)).)

The defendants completely disregard Triumph's reference to Tenn. Code Ann. § 62-6-136. This statute makes it unlawful for any person or entity to "represent itself as a licensed

contractor or to act in the capacity of a 'contractor' [as defined by statute] . . . unless such person [or entity] has been duly licensed under § 62-6-103." Tenn. Code Ann. § 62-6-136(a). Further:

> An individual who violates this section and would, but for this section, have limited liability as owner of an entity having limited liability protection, including, but not limited to, a corporation, is personally liable for the individual's own representations, acts or omissions to the same extent as if that individual rendered the representations, acts or omissions as an individual.

Tenn. Code Ann. § 62-6-136(c).

Triumph has submitted documents showing that Coulson was the sole shareholder of CMI and thus an "owner." Otherwise, however, this claim, too, appears to be dependent upon whether Coulson himself engaged in fraudulent misrepresentations or omissions regarding the licensure status of CMI. The motion to dismiss this claim, too, will be denied in light of the court's determination that the plaintiff should be permitted to amend the Complaint to allege fraud with greater specificity.

### F. Rescission

In Count XV, Triumph asserts that it has an "absolute right" to rescind the contract with CMI because it was induced to enter the contract by fraudulent and/or negligent misrepresentations. (Compl. ¶ 306.) In response, the defendants argue that the parties cannot be restored to the pre-contracting *status quo* at this late date. *See Song v. Chung*, No. E2018-00114-COA-R3-CV, 2018 WL 5618114, at *10 (Tenn. Ct. App. Oct. 30, 2018) ("[I]t is a fundamental rule in equity [that] a contract will not be rescinded if the parties cannot be placed in *status quo*.") (quoting *Lindsey-Davis Co. v. Siskin*, 358 S.W.2d 331, 333 (Tenn. 1962)). The defendants liken the situation to that in *Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993), in which the Tennessee Court of Appeals held that

rescission was inappropriate in the case of a contract for the sale of a business, because the buyer had already taken control of the business and invested in its continuing operation, making it impossible to restore the pre-sale *status quo*.

"A 'rescission' amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination . . . . It is the annulling, abrogation of the contract and the placing of the parties to it in *status quo*." *Stonecipher v. Estate of Gray*, No. M1998-00980-COA-R3CV, 2001 WL 468673, at *4 n.2 (Tenn. Ct. App. May 4, 2001) (quoting 22 Tenn. Jur. *Rescission, Cancellation and Reformation* § 1 (1999)). Rescission "can be an appropriate remedy for a fraudulent misrepresentation surrounding the formation of a contract." *Id.* (citing *Atkins v. Kirkpatrick*, 823 S.W.2d 547 (Tenn. Ct. App. 1991)). However, because "the purpose of rescission is to return the parties to the position they would have been in had the contract not existed," the remedy is not available "[i]f the parties cannot be returned to *status quo*, or, if due to the passage of time or other changed circumstances, equity cannot be done." *Id.* at *5 (citing *Lindsey-Davis Co.*, 358 S.W.2d at 333; *Lamons*, 909 S.W.2d at 801). Moreover, Tennessee law does not permit rescission "if an award of damages would be an adequate remedy." *Case Handyman Serv. of Tenn., LLC v. Lee*, No. M2011-00751-COA-R3CV, 2012 WL 2150857, at *7 (Tenn. Ct. App. June 13, 2012) (quoting *Douglas v. Foster*, No. M2000-03177-COA-R3-CV, 2002 WL 83605, at *1 (Tenn. Ct. App. Jan. 22, 2002)).

Because rescission is so closely bound up with fraud, some aspects of its availability would be inappropriate to consider until Triumph is able to amend its claims. The question of the impossibility of restoring the *status quo*, however, is a separate issue that the court can consider here. In response to CMI's rescission argument, Triumph argues primarily that the

question of whether rescission should be permitted is highly fact-bound and should not be addressed at the Rule 12(b)(6) stage. It has, however, offered no explanation for how the *status quo* between the parties could be restored.

In this case, Triumph and CMI entered into a contract for the construction of a four-story hotel. (Compl. ¶ 29.) CMI actually built the hotel, which received its certificate of occupancy in September 2018. (Compl. ¶ 100.) Although there remain some outstanding issues related to the adequacy of the construction, it would clearly be impossible to undo the construction of the hotel and restore the parties to the pre-Contract *status quo*. In addition, the plaintiff does not allege or show that a damages award would not be an adequate remedy ffor any of its claims.

Because Triumph has not identified a basis for allowing its rescission claim to continue or shown that a damages award would be inadequate, Count XV will be dismissed with prejudice.

## V.    Conclusion

For the reasons forth herein, the court will grant the plaintiff's motion to amend its pleading and will grant in part and deny in part the defendant's motion to dismiss. An appropriate Order is filed herewith.

ENTER this 15th day of August 2019.

_____
ALETA A. TRAUGER
United States District Judge